## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

CLAUDETTE LAMB, Natural Mother,  )
Next Friend and Guardian of the  )
Person and Estate of PATRICK RYAN  )
ELLIS, an Incapacitated Adult,  )
                              )
      Plaintiff,              )
                              )
vs.                            )   Case No. CIV-08-0083-F
                              )
JOHN BARTON, Director of Northern  )
Oklahoma Resource Center of Enid  )
(NORCE), a Division of the  )
Department of Human Services, et al.,  )
                              )
      Defendants.           )

## ORDER

Defendants John Barton and Mike Gwinnup move the court to dismiss the claims alleged against them in this action under Rule 12(b)(6), Fed. R. Civ. P.  (Doc. No. 8.)  Plaintiff Claudette Lamb (the mother, next friend, and guardian of the person and estate of Patrick Ryan Ellis, an incapacitated adult), has objected to dismissal, and the moving defendants have filed a reply brief.  Accordingly, the motion is ready for determination.

This action alleges claims under 42 U.S.C. § 1983 for violation of constitutional rights guaranteed by the Fourteenth Amendment, arising out of events on January 25, 2006.  The complaint alleges that non-moving defendant Theodore Thomas Hall, a Direct Care Specialist employed at the Northern Oklahoma Resource Center of Enid (NORCE), a division of the Oklahoma Department of Human Services, became embroiled in an altercation with plaintiff's ward, Patrick Ellis.  The complaint alleges that as a result of Mr. Hall's efforts to subdue Mr. Ellis using a restraint hold, Mr.

Ellis became unconscious.  The complaint further alleges that Mr. Hall attempted to cover up these events.  The moving defendants, Messrs. Barton and Gwinnup, are sued on grounds of improper supervision, instruction, policymaking, and policy implementation.  The complaint seeks money damages against all defendants.

## Standards

Under Rule 12(b)(6), the inquiry is whether the complaint contains enough facts to state a claim for relief that is plausible on its face.  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. V. Twombly, 127 S.Ct. 1955, 1974 (2007).  To survive a  motion to dismiss, a plaintiff must nudge her claims across the line from conceivable to plausible.  *Id*.  The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.  Ridge at Red Hawk, 493 F.3d at 1177.  In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff.  *Id*.[1]

## Allegations Regarding Barton and Gwinnup

The complaint alleges that Messrs. Barton and Gwinnup were involved in the events which resulted in injuries to Mr. Ellis by their conduct as policymakers, decision-makers and supervisors at NORCE.  More specifically, the complaint alleges that Messrs. Barton and Gwinnup are "policy makers" for NORCE; that they are "responsible for the ... implementation of policies pertaining to the training and supervision of the State employees at NORCE"; and that they are "responsible for the care and habilitation rendered to patients of NORCE...."  (Doc. no. 1, ¶ 2.)  The

---

[1]The moving papers include arguments and purported information beyond the face of the pleadings which  the court has not considered.

complaint alleges that Mr. Ellis' injuries were "the direct and proximate result of the improper training, supervision and instruction and implementation of care by Hall which was due directly to the policies and procedures implemented by the decision-makers for the Northern Oklahoma Resource Center, Barton and Gwinnup." (Doc. no. 1, ¶ 5). The complaint also alleges that "the incidents" and Mr. Hall's and the John Does' attempted "cover up" were "the direct and proximate result of improper training, supervision and instruction and as a result of decisions and policies implemented by the Defendant policy-makers, Barton and Gwinnup." (Doc. no. 1, ¶ 6.)

The complaint alleges that the "acts and omissions and policies implemented at NORCE... resulted in a deprivation of Plaintiff's ward's constitutional rights...." (Doc. no. 1, ¶ 7.) The complaint alleges that, under the Fourteenth Amendment, plaintiff's ward has a right "to reasonably safe conditions of confinement, freedom from unreasonable bodily restraint and habilitation while at NORCE." (Doc. no. 1, ¶ 8.) The complaint alleges that "the State had a duty to provide . . . services and care in an environment that was safe" and that "Defendants violated that duty by confining Plaintiff's ward in unsafe conditions depriving him of his constitutionally protected rights through their policies and procedures, resulting in his injuries and damages." (Doc. no. 1, ¶ 8.)

<u>Arguments for Dismissal</u>

Messrs. Barton and Gwinnup make three main arguments for dismissal of the claims alleged against them. Their first argument urges dismissal of the official capacity claims. The second and third arguments urge dismissal of the individual capacity claims.[2]

---

[2]In response to each of these arguments, plaintiff relies heavily on <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982). <u>Youngberg</u> does not appear to have involved official capacity claims. Moreover,
(continued...)

## Official Capacity Claims

First, movants urge dismissal of all claims alleged against them in their official capacities.  They make two-sub-arguments.  Movants argue that plaintiff cannot recover money damages against them in their official capacities due to the State of Oklahoma's Eleventh Amendment sovereign immunity.  They also argue that the official capacity claims are not viable, because, sued in their official capacities, they are not  "persons" subject to suit under § 1983.[3]

The complaint alleges that defendants are policymakers for NORCE, a residential and habilitative intermediate care facility for the mentally retarded which is operated by the Oklahoma Department of Human Services.  The moving defendants cite provisions of the Oklahoma Constitution and state statutes which establish, as a matter of law, that the Department of Human Services is an arm of the State of Oklahoma, a proposition plaintiff does not dispute and with which the court concurs.  Suing officials in their official capacity represents only another way of pleading an action against the entity of which an officer is an agent.  Monell v. New York City Dept. Of Social Services, 436 U.S. 658, 690, n.55 (1978).  The official capacity claims against Messrs. Barton and Gwinnup, therefore, are the equivalent of claims against an arm of the State of Oklahoma.  The State of Oklahoma, sued as the Department of Human Services, has not waived its immunity with respect to § 1983 claims for money damages.  McKinney v. State of Oklahoma, 925 F.2d 363, 365 (10th Cir. 1991).

---

[2](...continued)
its holding has been strictly limited to its facts (involving the involuntary commitment of a mental patient), and courts have questioned whether it has been overturned.  *See*, Hare v. City of Corinth 74 F.3d 633, 646-48 (5th Cir. 1996) (questioning Youngberg in light of subsequent Supreme Court decisions).

[3]Section 1983 provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory...subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...."

The court concludes that the official capacity claims are not viable because they are barred by the State of Oklahoma's Eleventh Amendment immunity.

The court also agrees with the movants that, as claims against the State of Oklahoma, the official capacity claims should also be dismissed because a state is not a "person" within the meaning of § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 65-68 (1989). *See also*, Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613, 617 (2002) ("we have held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted," citing Will v. Michigan).

For both of these reasons, either one of which would be sufficient, the court concludes that Messrs. Barton and Gwinnup are entitled to dismissal of the official capacity claims alleged against them.

Individual Capacity Claims

Second, the moving defendants argue that the individual capacity claims alleged against them must be dismissed because the complaint fails to allege sufficient grounds for individual liability on Mr. Barton or Mr. Gwinnup's part. Movants argue that mere negligence will not support § 1983 claims based on supervisory and failure-to-train liability. Movants argue that a § 1983 claim asserting violation of the Fourteenth Amendment must allege facts which, if proven, would amount to deliberate indifference.

When a § 1983 claim is predicated upon a supervisor's liability, mere negligence is insufficient; allegations of facts amounting to deliberate indifference (or the equivalent thereof by personal direction or actual knowledge and acquiescence, or recklessness) are required. *See*, Sutton v. Utah State School for the Deaf and Blind, 173 F.3d 1226, 1239-41 (10th Cir. 1999) (outlining detailed allegations in support of allegations that principal "acted with deliberate indifference" when he "failed to

adequately train school employees or adopt or implement a policy to prevent sexual assaults," concluding that individual capacity claim was viable against the principal under §1983); <u>Johnson v. Martin</u>, 195 F.3d 1208, 1219 (10th Cir. 1999) (proper articulation of the test of supervisory liability under § 1983 is that supervisor liability requires allegations of personal direction or of actual knowledge and acquiescence; mere negligence is insufficient, as are allegations of gross negligence; "[n]either simple nor gross negligence implies an intentional and deliberative violation of constitutional rights, and consequently neither form of negligence satisfies the scienter requirements of §1983," citations and quotations omitted).

The complaint alleges, in conclusory fashion, that the injuries which occurred to Mr. Ellis were "the result" of "improper training, [and] supervision" (doc. no. 1, ¶¶ 5, 6) by the moving defendants. There are no allegations of any facts to show that the moving defendants acted in a deliberately indifferent manner, or in a manner that would be the equivalent of such intentional conduct, in carrying out the supervisory and policy-making conduct that caused Mr. Ellis' injuries. Although the allegations refer to a right to "reasonably safe" conditions, to freedom from "unreasonable" restraints, and to "improper" policies, these allegations, even if proven, do not rise to the level of conduct required to establish supervisory liability under § 1983. The court concludes that allegations do not state a claim for relief against Mr. Barton or Mr. Gwinnup in their individual capacities.

The moving defendants' third major argument is that they are entitled to qualified immunity with respect to the individual capacity claims, because, when challenged on qualified immunity grounds, the complaint does not contain enough facts to nudge plaintiff's claims across the line from conceivable to plausible.

When state employees are sued in their individual capacities for injuries to an individual inflicted by someone else, the complaint must allege facts sufficient to

show that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time. *See*, Robbins v. Oklahoma, 519 F.3d 1242, 1248-49 (10th Cir. 2007) (Department of Human Services employees, sued in their individual capacities under § 1983 by parents of a child who had suffered a fatal injury at subsidized daycare center, were entitled to qualified immunity, where facts were not alleged that would have nudged plaintiffs' claims past the qualified immunity defense).  At some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled.  *Id*. at 1248.

This does not mean that complaints in cases subject to qualified immunity defenses must include all factual allegations necessary to sustain a conclusion that defendant violated clearly established law.  *Id*. at 1249.  There is no heightened pleading standard.  *Id*.  However, complaints in § 1983 cases against individual government actors must contain allegations sufficient to make clear the grounds on which the plaintiff is entitled to relief; without such allegations, it would be impossible for the court to perform its function of determining, at an early stage, whether the asserted claim is clearly established.  *Id*.

When a qualified immunity defense tests individual capacity claims at the motion to dismiss stage, the trial court is under an obligation to exercise its discretion in a way that protects the substance of the qualified immunity defense.  *Id*. at 1249, n.2.  The trial court should insist that the plaintiff put forward specific, non-conclusory factual allegations, to assist the court in determining whether the complaint is plausible.  *Id*.  Moreover, when qualified immunity is the issue, the burden rests on the plaintiff to provide fair notice of the grounds for the claims made against each of the defendants.  *Id*. at 1250.

Fair notice and sufficient facts alleged so as to present a plausible claim to relief depends on context. *Id*. at 1248.  In the context of § 1983 claims alleged against defendants asserting qualified immunity, plausibility refers to the scope of the allegations in the complaint; if they are "so general that they encompass a wide swath of conduct, much of it innocent", *id*. at 1247, (such as policymaking, or training, or supervising), and if the allegations are no more than labels and conclusions or a mere formulaic recitation of the elements of a cause of action, *id*., (such as recitals that defendants' supervisory policies or training failures resulted in the complained of injuries), then such allegations may be inadequate.

As previously stated, the allegations against the moving defendants in this action are based on the moving defendants' involvement as supervisors, policymakers and decision makers; as alleged in this complaint, these allegations are (to use terminology from Robbins and cases quoted in Robbins) conclusory, formulaic, and sketchy.  The allegations fail to give any real notice regarding which of these two moving defendants is alleged to have done what to whom in his capacity as a supervisor or policymaker or decision maker with resulting injury to Mr. Ellis.  *See, id*. at 1250 (when government actors are sued in their individual capacities, "it is particularly important...that the complaint make clear exactly *who* is alleged to have done *what* to *whom*.)  In the context of this action, the court concludes that the allegations against Messrs. Gwinnup and Barton, challenged on the basis of the defendants' qualified immunity defense, do not contain enough factual information to nudge the claims from possible to plausible.

When the allegations fail to meet minimal pleading requirements of notice and plausibility, as these claims do not, further analysis of qualified immunity and plausibility is not needed; the court may simply grant qualified immunity to the moving defendants and stop there.  *See*, VanZandt   v. Oklahoma Department of

Human Services, 2008 WL 1945344, *5 (10th Cir. 2008) (§ 1983 complaint that failed to allege who had done what to whom did not meet minimal notice requirements under Twombly; defendants were entitled to qualified immunity and district court was ordered to dismiss those defendants with prejudice), unpublished opinion cited here pursuant to the criteria of Tenth Circuit Rules.  Nevertheless, as an alternate basis for dismissal, the court briefly states its conclusion that the allegations fail to describe conduct that rises to the level of a constitutional violation, and that the allegations do not allege any conduct which, if proven, would show defendants violated clearly established law.  *See*, Robbins, 519 F.3d at 1249 (in context of § 1983 claims for injuries to child inflicted by third parties, challenged by Department of Human Services employees on qualified immunity grounds where employees were sued in their individual capacities, "[t]o nudge their claims across the line from conceivable to plausible...plaintiffs must allege facts sufficient to show...that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." (quoting Bell Atlantic, 127 S.Ct. at 1974)).

   For all of these reasons, any one of which would be sufficient, the court concludes that, based on their qualified immunity defense, Messrs. Barton and Gwinnup are entitled to dismissal from the individual capacity claims alleged against them.

Rulings

   After careful consideration, Messrs. Barton and Gwinnup's motion to dismiss is **GRANTED** under Rule 12(b)(6).  All official and individual capacity claims against these two defendants are **DISMISSED**.  The official capacity claims alleged against these two defendants are dismissed with prejudice because leave to amend would be futile.  With respect to the individual capacity claims, if plaintiff's counsel believes that facts regarding Messrs. Barton and Gwinnup's individual involvement

in the events and injuries which are the subject of this action can be alleged, consonant with counsel's obligations under Rule 11, Fed.R.Civ.P., sufficient to satisfy all of the pleading requirements described in this order, then a motion for leave to amend for that limited purpose only may be filed within fifteen days of the date of this order, attaching a copy of the proposed first amended complaint.  Absent such amendment, Messrs. Barton and Gwinnup are dismissed with prejudice from the individual capacity claims alleged against them.  This action continues against all defendants except John Barton and Mike Gwinnup, who, absent amendment, are dismissed.

Dated this 11th day of June, 2008.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

08-0083p003(pub).wpd